**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**


**LASHONDA FOWLER**                                                    **PLAINTIFF**


**vs.**                                        **CIVIL ACTION NO. 3:10-CV-00048-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SSA**                                                **DEFENDANT**


**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the application of plaintiff Lashonda

Fowler for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I)

and 223 of the Social Security Act and for supplemental security income (SSI) payments under

Section 1614(a)(3) of the Act.  Plaintiff filed applications for POD, DIB and SSI on March 16,

2007, alleging disability beginning on September 17, 2005.  Docket 4, Exhibit 6, p. 113-114,

119-120, 126.[1]   Plaintiff's claim was denied initially (Ex. 4, p. 72-75, Ex. 5, p.76-81) and on

reconsideration.  Ex. 5, p. 86-91.  She filed a request for hearing (Ex. 3, p. 39) and was

represented by an attorney at the administrative hearing on March 2, 2009.  Ex. 3, p. 40-71.  The

Administrative Law Judge (ALJ) issued an unfavorable decision on June 25, 2009 (Ex. 3, p. 23-

36) and on April 21, 2010, the Appeals Council denied plaintiff's request for a review.  Ex. 3, p.

1-3.  Plaintiff timely appealed to this court and it is now ripe for review.  Because both parties

have consented to have a magistrate judge conduct all the proceedings in this case under 28

_____

[1]  The Administrative Record in this case is attached to the defendant's Answer at Docket Entry
4.  All citations to the Administrative Record are to the Exhibit and Page Number at Docket
Entry 4.

U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on November 25, 1972 and was 32 years old at the alleged onset of her disability. Ex. 3, p. 43. She completed the tenth grade and previously worked as a cook, cashier, catfish dresser or filleter and housekeeper. Ex. 3, p. 43-44, 59, Ex. 7, p. 134, 142. Plaintiff contends that, as a result of an injury at work, she became disabled from back pain and depression. Ex. 3, 45-48, Ex. 7, p. 133.

The ALJ determined that plaintiff suffered from "severe" impairments, including degenerative disc disease and depression (Ex. 3, p. 28-30), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1525, 404.1526,416.925 and 416.926). The ALJ found that the plaintiff's depression did not meet the "paragraph B" criteria of 20 C.F.R. Part 404, Subpart P, App. 1, because plaintiff experienced only mild restrictions of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. Ex. 3, p. 31.

Based upon consideration of the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to "lift/ carry 10 pounds occasionally and less than 10 pounds frequently, stand walk 2 hours during an 8 hour period, and sit 6 hours during an 8 hour period with occasional stooping, kneeling, crouching, crawling, climbing and balancing. She can only do simple tasks." Ex. 3, p. 32. The ALJ found plaintiff not fully credible in that her claimed symptoms – particularly the degree of pain and limitation – are not consistent with

the objective medical evidence. According "no weight" to the opinions of the plaintiff's treating physicians, Dr. Aziz and Dr. Poe[2], the ALJ found their opinions "inconsistent with the objective medical evidence" based in part on the consulting examination opinion of Dr. Adams that the plaintiff "had documented lumbar disc disease and symptoms but no signs of left radiculopathy since 2005." Ex. 3, p. 33. The ALJ likewise accorded a mental evaluation by Dr. Whelan, consulting physician at LifeHelp, "no weight" in light of inconsistencies between Whelan's opinion and treatment notes of Dr. Jackson, plaintiff's treating physician at LifeHelp. Ex. 3, p. 33-34.

After evaluating all evidence in the record, including testimony of the vocational expert [VE] at the hearing, the ALJ held that plaintiff could not perform any past relevant work but, with the limitations set out by the ALJ in his hypothetical, could perform the job of order clerk food/beverage (DOT #209.567-014), topper (DOT #685-687.026) or surveillance systems monitor (DOT #379.367-010). Ex. 3, p. 34-35. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. Ex. 3, p. 35.

The plaintiff claims that the ALJ erred in assessing the severity of the plaintiff's depression and erred in weighing the opinions of the treating and consulting opinions, resulting in a RFC that was not supported by the evidence.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step

---

[2] Dr. Poe, the plaintiff's treating physician, provided a Medical Source Statement stating that the plaintiff was not capable of even "low stress" jobs and "increase [in] stress results in worsening depression symptoms and increase in pain." Ex. 8, p. 240. She opined that the plaintiff could sit for less than 2 hours in an 8 hour work day. Ex. 8, p. 241.

sequential evaluation process.[3]  The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4]  First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5]  Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[6]  At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[7]  If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

---

[3]  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[4]  *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[5]  20 C.F.R.§§ 404.1520(b),  416.920(b) (2003).

[6]  20 C.F.R. §§ 404.1520, 416.920 (2003).

[7]  20 C.F.R. §§ 404.1520(d), 416.920 (2003).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. §§ 404.1525, 416.925 (2003).

[8]  20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[9]  20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

cannot, in fact, perform that work.[10]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited powers of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402

---

[10] *Muse*, 925 F.2d at 789.

[11] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since September 17, 2005, satisfying step one. Ex. 3, p.28. At step two, the ALJ found at step two that plaintiff's degenerative disc disease and depression were severe impairments (Ex. 3, p. 28-30) but, at step three, determined that the impairments did not meet the stringent requirements set out in the listings,[13] specifically that the plaintiff's mental impairment did not meet or medically equal the criteria under Listing 12.04 of 20 C.F.R. Part 404, Subpart P, App. 1. Ex.3, p. 31.

Regarding her credibility, the ALJ found that the degree of pain and limitation claimed by the plaintiff was not supported by the objective medical evidence, noting that she was noncompliant with depression medication and appointments for treatment and that her mental status appeared stable with medication. Ex.3, p. 33. The ALJ found that plaintiff has the RFC to perform work functions which are mentally limited to "simple tasks." Based on the RFC and the testimony of the VE, the ALJ found at step four in the sequential process, that plaintiff could not return to her past work (Ex. 3, p. 31, 34), but he concluded at step five that she is capable of performing other work and is, therefore, not disabled. Ex. 3, p. 34-35.

The plaintiff argues that the ALJ erred in determining the severity of the plaintiff's mental impairment at step three, resulting in an RFC that was unsupported by the evidence. Docket 8, p. 5-13. Under Listing 12.04, the required level of severity is met when (1) paragraph

---

[13] At step three of the sequential process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing).

A and paragraph B requirements are satisfied or (2) when paragraph C requirements are met.

Therefore, under paragraphs A and B, the plaintiff must demonstrate that she has *both* medically

documented depressive syndrome, AND she must demonstrate two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration . . . .

Alternatively, under paragraph C, she must demonstrate "a medically documented history of a

chronic affective disorder of at least 2 years' duration that has caused more than a minimal

limitation of ability to do basic work activities, with symptoms or signs currently attenuated by

medication or psychosocial support," and, in relevant part, "[r]epeated episodes of

decompensation, each of extended duration..."  20 C.F.R. Part 404, Subpart P, App. 1, Listing

12.04.

In a Mental Impairment Questionaire dated February 6, 2009, Dr. Whelan, a physician at

LifeHelp, described the plaintiff's diagnosis as "major depressive disorder, recurrent, severe"

and noted sleep disturbance, mood disturbance, decreased energy and difficulty thinking or

concentrating.  Ex. 9, p. 348.  In Dr. Whelan's opinion the plaintiff experienced moderate

restrictions in daily living, moderate difficulties maintaining social functioning and moderate

difficulties in maintaining concentration, persistence, or pace. Ex. 9, p. 348-349.  Dr. Whelan

reported medically documented chronic affective disorder with repeated episodes of

decompensation, each of extended duration.  Ex. 9, p. 350.

In contrast, the ALJ concluded that plaintiff experienced only mild restrictions of daily

living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence, or pace and no episodes of decompensation. Ex. 3, p. 31.  He

accorded "no weight" to Dr. Whelan's opinions of because Whelan was not a treating physician, and his opinions were not supported by mental status examinations by Dr. Jackson, plaintiff's treating physician at LifeHelp. The ALJ explained that Dr. Jackson's treatment notes indicate "in July 2007 and February 2008 her depression appeared stable on medication." Ex. 3, p. 34. The ALJ offered no other discrepancies or support for discounting Whelan's opinion.

The plaintiff argues that the ALJ did not accord proper weight to Dr. Whelan's opinions because the record does not contain any opinion from a treating or examining mental health specialist that contradicts those opinions,. Docket 8, p. 9. The Commissioner responds that the ALJ, considering the record as a whole, properly evaluated plaintiff's mental impairment and properly discounted Dr. Whelan's opinions because of inconsistencies between his opinions and the plaintiff's mental health treatment records. Docket 9, p. 15-16.

Dr. Whelan is a consulting physician.[14] Although he did not examine the plaintiff, he had complete access to her mental health records. He reviewed the records and evaluated the plaintiff's condition based on the information contained in her records. The ALJ discounted the only mental medical source opinion contained in the record when he accorded "no weight" to Dr.

---

[14]The plaintiff argues that the detailed analysis of *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) should apply in this case, apparently arguing that Dr. Whelan should be considered a treating physician. *Newton* noted the factors that an ALJ must consider before declining to give evidence of a treating physician controlling weight:

    (1)    the physician's length of treatment of the claimant,
    (2)    the physician's frequency of examination,
    (3)    the nature and extent of the relationship
    (4)    the support of the physician's opinion afforded by the medical evidence of record,
    (5)    the consistency of the opinion with the record as a whole, and
    (6)    the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). The court rejects this argument because Dr. Whelan did not treat or personally evaluate the plaintiff.

Whelan's opinion.

Although the ultimate question of disability is one left to the Commissioner, *J.B. ex rel. Barboza v. Astrue*, 2010 WL 3622034, *2 (D.Mass. September 17, 2010); *Davis v. Califano*, 599 F.2d 1324,1328 (5th Cir. 1979), the ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Further, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits . . . ." " *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085 (2000).

It is clear that the ALJ reviewed the entire record, identified the relevant listed impairments, discussed the evidence that was contained in the record and concluded that the balance tipped toward functional ability as required in determining whether the plaintiff's impairments met or equaled a Listing Impairment. *Burnett v. Commissioner of Social Sec.*, 220 F.3d 112, 119-20 (3rd Cir. 2000). However, in evaluating the severity of plaintiff's depression, the ALJ identified discrepancies between the opinion of a consulting physician and the notes of a treating physician from the same facility but did not seek clarification or request an additional consultive examination.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further assure that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

In the face of conflicting information from doctors at the same facility, the ALJ should have requested an additional mental evaluation or, at least, sought clarification from Dr. Whelan regarding the discrepancies between his opinion and the documents that he relied upon in formulating the opinion. Consequently, the ALJ did not satisfy his affirmative duty to develop the record.

Further, the ALJ clearly understood the value of obtaining a medical source opinion for plaintiff's physical impairment [degenerative disc disease][15] and easily could have sought the same level of support for his determination for her mental impairment [depression]. Absent Dr. Whelan's opinion, the record contained no mental medical source opinion. It is the ALJ's responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in doing so he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not establish physical

---

[15]At the hearing on March 2, 2009, the ALJ stated"[I] [w]ant to see some doctor [that] said she need[s] back surgery. . ." "I want to see some expert, orthopedist or neurosurgeon, not a general practitioner like Dr. Poe. . . I'm going to send the claimant for an orthopedic CE, and may have the orthopedist to give me an RFC." Ex. 3, p. 68. On April 24, 2009, Dr. Adams provided a consultative examination report. Ex. 9, p. 357 - 363.

limitations or the lack thereof without medical proof to support such a conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). The undersigned finds that record contained no such medical evidence and the ALJ, therefore, reached a conclusion that was not supported by substantial evidence.

## IV. PLAINTIFF'S REMAINING ARGUMENTS

Because this action is being remanded for further evaluation consistent with this opinion, the court need not address in detail the merits of the plaintiff's remaining arguments at this time. However, it appears that on remand the ALJ should likewise re-examine the physical portion of the RFC which he established.

The ALJ provided a hypothetical to the VE during the hearing that contained the limitation of sitting for "6 hours during an 8 hour period" (Ex. 3, p. 61) and ultimately included this limitation in plaintiff's RFC. Ex. 3, p. 32. However, at the time of the hearing, plaintiff's treating physician Dr. Poe had provided the only opinion on how long the plaintiff could sit in an 8-hour work day, limiting her to sitting a maximum of two hours at a time. Ex, 8, p. 241. After the hearing consulting physician Dr. Adams concluded that the plaintiff could sit for six hours in an 8-hour workday, but only for thirty minutes without interruption. Ex. 9, p. 361. The ALJ did not address the limit on continuous sitting in the RFC determination, his decision or as a hypothetical to the VE. This undersigned finds that this additional limitation has a material bearing on the hypothetical posed to the VE and should be re-examined on appeal.

Additionally, during the pendency of this appeal, the plaintiff was awarded disability benefits beginning June 24, 2009, one day after the ALJ's denial in this case. Docket 11. "When new evidence becomes available after the Secretary's decision and there is a reasonable

probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). To justify remand, the information must be "new" and "material" and the plaintiff must show "good cause" for failing to provide the evidence at the original proceedings. *Id.* This information was not available prior to the ALJ's decision or before review by the Appeals Council. However, since this matter is being remanded on other grounds, the ALJ should consider any new and material evidence contained in the plaintiff's file relating to her subsequent application for disability benefits.

V. CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 18th day of January, 2011.


                                     /s/ S. Allan Alexander
                          UNITED STATES MAGISTRATE JUDGE